[No. 24487-3-III. Division Three. December 14, 2006.]

ANTHONY T. SAM, *as Administrator, Appellant*, v. OKANOGAN COUNTY SHERIFF'S OFFICE ET AL., *Respondents*.

*Ronald A. Hammett* (of *Law Office of Ronald A. Hammett*), for appellant.

*Heidi E. Smith* (of *Karro & Smith, PLLC*) and *Karl F. Sloan, Prosecuting Attorney*, and *Stephen M. Bozarth, Deputy*, for respondents.

¶1 KATO, J. — Anthony Sam is the executor of Shura Lewton's estate. The Okanogan County Sheriff instituted forfeiture proceedings for cash and other items belonging to Mr. Lewton. The court ordered the seized items to be forfeited. Contending his due process rights were violated and the evidence did not support the order of seizure, Mr. Sam appeals. We affirm.

¶2 On April 18, 2003, Shura Lewton and David Nichols, both California residents, were reported missing while flying a small aircraft in Washington. On August 8, 2003, the airplane was located 14 miles south of the Canadian border in Okanogan County. The remains of Mr. Lewton and Mr. Nichols were found at the scene, as well as $118,134 in cash and other personal items.

¶3 On August 19, 2003, Cheryl Rios-Diaz Lewton, Mr. Lewton's former wife, received notice from the Okanogan

County Sheriff that he was seeking to forfeit the cash and other items found on the plane. Ms. Rios-Diaz Lewton made a claim. A hearing was set for November 6, 2003.

¶4 On October 28, 2003, Anthony Sam notified the Okanogan County Sheriff he was the executor of Mr. Lewton's estate. He demanded that all personal property be returned to the estate and/or requested a hearing in superior court. The Okanogan County Sheriff responded that Mr. Sam's claim was not timely but informed him of the hearing on November 6. The hearing was later continued until December 9, 2003.

¶5 On December 8, 2003, Mr. Sam filed a motion removing the action to superior court. Both parties moved for summary judgment. The court denied the motions. The case proceeded to bench trial in July 2005.

¶6 At trial, Detective Kreg Sloan testified he conducted a death investigation at the crash scene. The plane was registered to Mr. Nichols and was found 14 miles south of the Canadian border. Detective Sloan noticed the top portion of the instrument panel where switches were located was broken off. A heat switch, normally turned on during icy conditions, was on as was the propeller ice switch. The transponder was in the off position. The detective noted this was unusual because when flying in poor conditions, it is normal to fly with the transponder on, causing the aircraft to show up as an unidentified blip on radar.

¶7 The rear passenger seat had been removed and the airplane had two extra fuel tanks. This suggested the plane was fitted to allow for extra cargo. The extra fuel tanks allowed them to fly without making suspicious stops. The plane also had smaller than normal identifying letters and numbers, making identification more difficult.

¶8 Detective Sloan found a leather bag containing a box with $95,080 in cash. There was an envelope attached to the box with $5,000 more in cash and another bag with $15,000 in cash. $2,474 was found in Mr. Nichols' pants pockets; $580 was found in Mr. Lewton's pants pockets. The

money was bundled in groups of $100, $50, and $20 bills. The detective also found a ledger appearing to show drug transactions. One entry read "3100 - 1 lb," Clerk's Papers at 109, representing the payment of $3,100 for a pound of "B.C. Bud" marijuana. The date of one entry coincided with an earlier trip made by Mr. Nichols, whose shaving kit contained papers and a small amount of marijuana.

¶9 Tyler Morgan, an agent with United States Immigration and Customs, testified as an expert witness. He believed the money was "drug money" as evidenced by the manner in which it was packaged. Report of Proceedings at 114. He opined the airplane intended to go into Canada where the men planned to use the money to buy drugs.

¶10 Agent Morgan also testified that federal law required the reporting at customs prior to departure of over $10,000 in cash being transported from the United States to Canada. No such report existed here, suggesting the money was for something other than a legitimate business.

¶11 Mr. Sam testified and said Mr. Lewton had inherited money from his grandmother and dealt mainly in cash.

¶12 The court ordered the seized items to be forfeited. This appeal follows.

¶13 Mr. Sam claims the forfeiture action violated due process because the hearing was not held within the requisite 90 days. A court derives its authority to order a forfeiture of property solely from RCW 69.50.505. *Bruett v. 18328 11th Ave. Ne.*, 93 Wn. App. 290, 296, 968 P.2d 913 (1998); *Espinoza v. City of Everett*, 87 Wn. App. 857, 865, 943 P.2d 387 (1997), *review denied*, 134 Wn.2d 1016 (1998). The government is estopped from proceeding in a forfeiture action if it fails to follow statutory procedures. *State v. Alaway*, 64 Wn. App. 796, 799-800, 828 P.2d 591, *review denied*, 119 Wn.2d 1016 (1992).

¶14 When property is seized under RCW 69.50.505 without a prior adversarial hearing, due process requires that a hearing be held within 90 days. *Tellevik v. 31641 W. Rutherford St.*, 125 Wn.2d 364, 371-72, 884 P.2d 1319

(1994) (*Tellevik* II); *Tellevik v. 31641 W. Rutherford St.*, 120 Wn.2d 68, 87, 838 P.2d 111, 845 P.2d 1325 (1992) (*Tellevik* I); *Espinoza*, 87 Wn. App. at 865.

¶15 The Okanogan County Sheriff argues that pursuant to former RCW 69.50.505(e) (2001), the 90-day requirement does not apply when a claimant removes a forfeiture action to a court. However, *Tellevik* II makes it clear the 90-day requirement applies regardless of the forum chosen by the claimant. *Tellevik* II, 125 Wn.2d at 372-74.

 ¶16 Relying on *Valerio v. Lacey Police Department*, 110 Wn. App. 163, 172, 39 P.3d 332 (2002), and *Escamilla v. Tri-City Metro Drug Task Force*, 100 Wn. App. 742, 999 P.2d 625 (2000), the Okanogan County Sheriff asserts due process was nevertheless satisfied because a hearing had been scheduled within 90 days. In *Valerio*, the claimant's hearing was postponed due to his own request that the case be removed to superior court. *Valerio*, 110 Wn. App. at 173. The court found the claimant could have had a hearing within the 90-day requirement so it was scheduled within the time limits. *Id.* at 174. The hearing was eventually held a little more than two months after the 90-day time limit expired. *Id.* The court held due process was not violated because the claimant had not shown the superior court could have set an earlier date or the hearing was not held within a reasonable time in light of the superior court calendar. *Id.* In making this determination, the court considered (1) the length of the delay, (2) the reason for the delay, (3) the claimant's assertion of his right to a hearing, and (4) whether the claimant suffered any prejudice. *Id.* (citing *In re Forfeiture of One 1988 Black Chevrolet Corvette Auto.*, 91 Wn. App. 320, 324, 963 P.2d 187 (1997)).

¶17 In *Escamilla*, this court followed the Administrative Procedure Act, chapter 34.05 RCW, and held an adjudicative proceeding commences when a party is notified that some stage of the proceeding will be conducted. *Escamilla*, 100 Wn. App. at 749. Because notice of the hearing there was sent within 90 days, due process was satisfied. *Id.*

¶18 Mr. Sam was entitled to a hearing within 90 days of the seizure of the property, regardless of the forum. A hearing was indeed scheduled within the 90-day period, and he received notice of the hearing. This satisfies due process under *Escamilla* and *Valerio*. Mr. Sam was also the person who requested the removal to superior court, in effect requesting the delay.

¶19 We also consider the four *Valerio* factors. The delay here was long. The reason for the delay was court congestion. Mr. Sam claims he was prejudiced by the delay, but he fails to show how he was prejudiced. Due process was satisfied in these circumstances.

¶20 Mr. Sam next claims the court erred by admitting and relying on hearsay testimony by Agent Morgan. We review a trial court's decision to admit evidence for abuse of discretion. *State v. Neal*, 144 Wn.2d 600, 609, 30 P.3d 1255 (2001). A witness is to testify on matters about which he has personal knowledge. *See* ER 602. But testimony relying on the practical experience and acquired knowledge of an expert may be admitted. *State v. Stenson*, 132 Wn.2d 668, 717, 940 P.2d 1239 (1997), *cert. denied*, 523 U.S. 1008 (1998). These expert opinions may rely on hearsay. ER 703; *Sunbreaker Condo. Ass'n v. Travelers Ins. Co.*, 79 Wn. App. 368, 374, 901 P.2d 1079 (1995), *review denied*, 129 Wn.2d 1020 (1996).

¶21 Agent Morgan testified about the reports and information he received and read from the authorities, which he subsequently used to form his opinions. The court was thus permitted to allow the admission of this testimony. *Group Health Coop. of Puget Sound, Inc. v. Dep't of Revenue*, 106 Wn.2d 391, 399, 722 P.2d 787 (1986). The admission of these facts, however, is not proof of them. *Id.* at 399-400.

¶22 Mr. Sam claims five of the court's findings of fact were not supported by the evidence because they were based on Agent Morgan's reliance on hearsay. *See World Wide Video, Inc. v. City of Tukwila*, 117 Wn.2d 382, 387, 816 P.2d 18 (1991) (findings are upheld if they are supported by substantial evidence), *cert. denied*, 503 U.S. 986 (1992).

¶23 Finding of fact 7 indicates Mr. Nichols had flown through Wenatchee 14 times and refueled his aircraft. The finding further states there was no legitimate reason given for the purpose of these flights. This testimony was based upon the reports, which were not admitted into evidence. The admission of the testimony, however, was not proof of the facts. Without more, the finding is unsupported by substantial evidence.

¶24 Finding of fact 8 relates to the activities of Mr. Lewton and Mr. Nichols immediately prior to the crash. Finding of fact 9 refers to items found on the plane and the manner in which the two men died. Finding of fact 16 refers to the fact that the plane was flying with the transponder off. Finding of fact 17 referred to Agent Morgan's opinions about how to spot drug smugglers. This evidence was testified to by both Agent Morgan and Detective Sloan. There has been no objection to Detective Sloan's testimony, which provides substantial evidence to support the finding.

¶25 The court erred by entering finding of fact 7 because it accepted Agent Morgan's reliance on hearsay as proof of the facts. The remaining findings, however, were supported by admissible evidence. We will consider only the findings supported by substantial evidence in determining if the order of forfeiture was supported by the evidence. *See State v. Caldera*, 66 Wn. App. 548, 551, 832 P.2d 139 (1992).

¶26 Mr. Sam contends the evidence did not support the court's order of forfeiture. "RCW 69.50.505 generally provides that law enforcement may seize property without process when probable cause exists to believe the property is being used for illegal drug activity, or represents proceeds of illegal drug sales." *Escamilla*, 100 Wn. App. at 747.

¶27 Under former RCW 69.50.505(b)(4), the seizing agency had the initial burden of showing probable cause to believe the seized items were the proceeds of or intended to be used in illegal drug activities. *Valerio*, 110 Wn. App. at 176. Once probable cause was established, the burden shifted to the claimant to prove by a preponderance of the evidence either that the property was not used or intended

to be in an illegal drug activity or that it was used without the owner's consent or knowledge. *Id.*

¶28 In 2003, the legislature changed the burden of proof required: "In all cases, the burden of proof is upon the law enforcement agency to establish, by a preponderance of the evidence, that the property is subject to forfeiture." RCW 69.50.505(5); *see* Laws of 2003, ch. 53, § 348. No Washington case addresses this change.

¶29 Federal law, however, went through a similar change and is accordingly instructive. *United States v. $22,991.00, More or Less, in U.S. Currency*, 227 F. Supp. 2d 1220, 1231 (S.D. Ala. 2002). The government may meet its burden through direct or circumstantial evidence. *Id.* Here, the court based its decision on several facts. First, it noted that the amount of money found on the plane was an unusually large sum. It was considerably more than what is permitted to be transported to Canada without prior reporting. This fact is highly probative of illegal activity and can help establish a link to illegal drug activity. *United States v. $121,100.00 in U.S. Currency*, 999 F.2d 1503, 1507 (11th Cir. 1993); *United States v. Thomas*, 913 F.2d 1111, 1115 (4th Cir. 1990); *United States v. U.S. Currency, $83,310.78*, 851 F.2d 1231, 1236 (9th Cir. 1988).

¶30 The money was found close to a small amount of marijuana. This is also circumstantial evidence of illegal drug activity. *$22,991.00*, 227 F. Supp. 2d at 1233. In addition to the marijuana, the police found a notebook that appeared to be a log of drug transactions. It is also circumstantial evidence the money was connected to illegal drug activity. *Id.*; *see also United States v. $149,442.43 in U.S. Currency*, 965 F.2d 868, 877 (10th Cir. 1992).

¶31 There are several other facts proving circumstantial evidence the money was connected to illegal drug activity. The money was bundled and located in several different containers. The plane was retrofitted with extra fuel tanks and cargo storage. The controls on the plane suggested Mr. Lewton and Mr. Nichols were flying low in an attempt to avoid radar detection. Taken as a whole, these facts support

the court's finding, by a preponderance of the evidence, that the money was connected to drug activity.

¶32 Affirmed.

BROWN, J., concurs.

¶33 SCHULTHEIS, A.C.J. (dissenting) — Under former RCW 69.50.505(a)(7) (2001), a law enforcement agency may seize and retain by civil forfeiture any money "furnished or intended to be furnished by any person in exchange for a controlled substance." The seizing agency must have probable cause to believe that the property was used or was intended to be used in violation of Washington's Uniform Controlled Substances Act, chapter 69.50 RCW. Former RCW 69.50.505(b)(4). In a hearing challenging forfeiture, the seizing agency carries the burden of establishing that forfeiture is justified by a preponderance of the evidence. Former RCW 69.50.505(e). Because I conclude that the admissible evidence produced at the civil forfeiture hearing did not establish probable cause or sufficient evidence that the money found in the crashed airplane was to be exchanged for controlled substances, I respectfully dissent.

¶34 As indicated in *Valerio v. Lacey Police Department*, 110 Wn. App. 163, 176-77, 39 P.3d 332 (2002), to support probable cause for forfeiture, the seizing agency must show reasonable grounds for suspicion substantiated by circumstances that support a cautious person's belief that the property was used or was intended for use in a controlled substances crime. The trial court here found that separating over $118,000 into bundles that could be paid to separate suppliers was consistent with recent cases of drug smuggling between the United States and Canada. In several findings of fact, the trial court found that this large amount of money and its packaging were not consistent with a legitimate transaction. Clerk's Papers (CP) at 107, 109, 111. While I agree that the evidence establishes probable cause that Shura Lewton and David Nichols were involved in an illegal activity, I find insufficient evidence to

connect that activity with narcotics. *Valerio*, 110 Wn. App. at 180-81.

¶35 The essential facts are that a large amount of packaged money was found in a crashed airplane that was equipped and operated in a manner that suggested an intent to transfer contraband. The only evidence suggesting a connection to controlled substances was a notepad that contained an entry of "3100 - 1 lb" and the fact that Mr. Nichols apparently used a small amount of marijuana recreationally. CP at 109. Large sums of packaged money are not enough alone to establish a narcotics transaction. *See, e.g., United States v. $121,100.00 in U.S. Currency*, 999 F.2d 1503, 1506-07 (11th Cir. 1993). And the trial court's finding that the entry in the notepad indicates the purchase or sale of one pound of "B.C. Bud" for $3,100 is only inferentially supported by the evidence. CP at 109. Recreational use of marijuana does not support a reasonable belief that the occupants of the airplane were drug smugglers. *See State v. Goodman*, 150 Wn.2d 774, 783, 83 P.3d 410 (2004) (mere possession of a controlled substance is insufficient to establish the inference of intent to deliver).

¶36 Additional circumstantial evidence here—that the airplane was scheduled to fly to Canada, a known source of B.C. Bud—is also tenuous, because nothing in the evidence points to B.C. Bud as the objective of the flight. The smuggling of any number of other items to or from Canada is just as likely.

¶37 Under the facts of this case, the circumstantial evidence supports no more than a suspicion, not a reasonable belief, that the money found in the airplane had been used or would be used in smuggling controlled substances. *Valerio*, 110 Wn. App. at 182-83. Accordingly, I would reverse the civil forfeiture on this basis.

¶38 Moreover, I would conclude as a matter of law that the money could not be forfeited because there is no evidence that the purportedly interested owner—the estate of Mr. Lewton—had knowledge of any alleged criminal activity. Personal property may not be forfeited "to the

extent of the interest of an owner, by reason of any act or omission which that owner establishes was committed or omitted without the owner's knowledge or consent." Former RCW 69.50.505(a)(7). Mr. Nichols' estate made no claim on the money found in the airplane. Consequently, only Mr. Lewton could have had actual or constructive possession. Anthony Sam, the personal executor of Mr. Lewton's estate, testified that Mr. Lewton did not use drugs and that he did not know why Mr. Lewton would have been flying to Canada on the day he died. Because the estate had no knowledge of Mr. Lewton's criminal activity, its interest in the money should not have been forfeited. *Id.*

¶39 Finally, I note that the primary purpose of the civil forfeiture provision is "to deter drug crime by removing some of its profit incentive." *Moen v. Spokane City Police Dep't*, 110 Wn. App. 714, 720, 42 P.3d 456 (2002); *see also* LAWS OF 1989, ch. 271, § 211. In a case such as this, when the only suspected criminals were killed, forfeiture of the money found in their possession would serve no deterrent purpose.

Reconsideration denied January 16, 2007.