IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | |
|---|---|
| CITY OF YAKIMA, on behalf of the Yakima City Narcotics unit, Detective Division of the Yakima Police Department, <br><br> Respondent, <br><br> v. <br><br> REAL PROPERTY KNOWN AS 1606 W. KING ST., LOCATED IN THE CITY OF YAKIMA, WASHINGTON, AND ALL APPURTENANCES AND IMPROVEMENTS THEREON, <br><br> Defendant in rem, <br><br> and <br><br> JOHN E. GANGWISH, property owner/claimant, <br><br> Appellant. | No. 33267-5-III <br><br><br><br> UNPUBLISHED OPINION |

PENNELL, J. — John Gangwish appeals a civil forfeiture judgment divesting him of real property due to controlled substances violations. Because substantial evidence supports the forfeiture and there is insufficient evidence to support a constitutional challenge, we affirm.

FACTS

On February 6, 2013, the city of Yakima (the City) initiated an action for civil forfeiture of real property commonly known as 1606 W. King Street (the Property). John Gangwish has owned the Property since 1995. Mr. Gangwish lived in the basement of the residence on the Property and rented out the upstairs. The forfeiture action stemmed from Jeannie Luppino-Cronk selling methamphetamine at the Property. Ms. Luppino-Cronk was a friend of Mr. Gangwish's tenant and stayed at the Property from time to time. The City alleged the Property was used for methamphetamine distribution with Mr. Gangwish's knowledge.

Evidence produced during the two-day forfeiture trial revealed the City began investigating the Property for drug trafficking based on an informant's tip. In March 2012, the Yakima Police Department facilitated three controlled methamphetamine purchases at the Property. In each controlled purchase, Ms. Luppino-Cronk was the supplier. Mr. Gangwish was not observed during any of the purchases, but he later admitted he had been using methamphetamine for the past 10 years and had once purchased methamphetamine from Ms. Luppino-Cronk.

On April 5, 2012, the police executed a search warrant on the Property. In an upstairs bedroom, police found almost one-half an ounce of methamphetamine in Ms.

2

Luppino-Cronk's purse. While upstairs, police found drug paraphernalia out in the open—including several used drug baggies, over 100 unused baggies, drug pipes, and digital scales. A search of Ms. Luppino-Cronk's car yielded drug-related ledgers. In Mr. Gangwish's basement bedroom, police found a baggie of methamphetamine, a drug pipe, and the monitor to at least one camera that surveilled the exterior of the Property. The baggie in Mr. Gangwish's room had a "#1" written on it in blue ink. The police discovered similarly marked baggies throughout the home, and at least one similar baggie was used during a controlled buy. In addition to the methamphetamine and paraphernalia, the search uncovered additional drug evidence including a moldy, hand-dug underground marijuana grow operation in the backyard of the Property. And Mr. Gangwish's brother, who lived next door, testified that individuals would come and go from the Property at all hours. On occasion, Mr. Gangwish's brother picked up baggies and other litter left by the Property's visitors.

Police arrested both Mr. Gangwish and Ms. Luppino-Cronk at the time of the April 2012 search. Mr. Gangwish told the police he allowed people to use methamphetamine inside his house but denied knowing anyone was selling drugs from the Property. Ms. Luppino-Cronk subsequently pleaded guilty to possession of methamphetamine with intent to deliver. Mr. Gangwish pleaded guilty to possession of methamphetamine and

3

was sentenced on October 31, 2013. Mr. Gangwish was also charged with maintaining a drug dwelling, but the charge was subsequently dismissed.

In early October 2013—while Mr. Gangwish's methamphetamine possession case was still pending and he was free from custody—the Yakima police conducted two more controlled purchases at the Property. This resulted in another search warrant, executed on October 17, 2013. During this second search, police found a methamphetamine pipe in one of Mr. Gangwish's tenant's rooms and a cellular telephone in Mr. Gangwish's room that contained a drug-related text message.

Following a bench trial, the trial court issued a letter opinion, findings of fact and conclusions of law, and a judgment ordering forfeiture of the Property to the City. Mr. Gangwish appeals.

## ANALYSIS

*Standard of Review*

This court reviews a bench trial decision to determine whether the findings of fact are supported by substantial evidence and whether those findings, in turn, support the conclusions of law. *Sunnyside Valley Irrig. Dist. v. Dickie*, 111 Wn. App. 209, 214, 43 P.3d 1277 (2002), *aff'd*, 149 Wn.2d 873, 73 P.3d 369 (2003). The label applied to a finding or conclusion is not determinative as this court "'will treat it for what it really

4

is.'" *The-Anh Nguyen v. City of Seattle*, 179 Wn. App. 155, 163, 317 P.3d 518 (2014)

(quoting *Para–Med. Leasing, Inc. v. Hangen*, 48 Wn. App. 389, 397, 739 P.2d 717

(1987)).

"'Substantial evidence' is the 'quantum of evidence sufficient to persuade a

rational, fair-minded person the premise is true.'" *City of Walla Walla v. $401,333.44*,

164 Wn. App. 236, 256, 262 P.3d 1239 (2011) (quoting *Clayton v. Wilson*, 168 Wn.2d 57,

63, 227 P.3d 278 (2010)). When assessing the sufficiency of the evidence, this court

defers to the trier of fact to determine the persuasiveness of the evidence, only considers

evidence favorable to the party prevailing below, and employs a presumption favoring the

trial court's findings. *Buck Mountain Owner's Ass'n v. Prestwich*, 174 Wn. App. 702,

713-14, 308 P.3d 644 (2013). This court will not disturb findings supported by

substantial evidence even if there is conflicting evidence. *Merriman v. Cokeley*, 168

Wn.2d 627, 631, 230 P.3d 162 (2010). Further, "[u]nchallenged findings of fact are

verities on appeal." *Buck Mountain Owner's Ass'n*, 174 Wn. App. at 714.

*Statutory Claims*

The Uniform Controlled Substances Act, chapter 69.50 RCW, allows the

government to seek civil forfeiture of:

5

> All real property, including any right, title, and interest in the whole of any lot or tract of land, and any appurtenances or improvements which are being used with the knowledge of the owner for the manufacturing, compounding, processing, delivery, importing, or exporting of any controlled substance . . . if such activity is not less than a class C felony and a substantial nexus exists between the commercial production or sale of the controlled substance and the real property.

RCW 69.50.505(1)(h).

"[T]he burden of proof is upon the law enforcement agency to establish, by a preponderance of the evidence, that the property is subject to forfeiture." RCW 69.50.505(5). This burden can be satisfied by direct or circumstantial evidence. *Sam v. Okanogan County Sheriff's Office*, 136 Wn. App. 220, 229, 148 P.3d 1086 (2006).

Mr. Gangwish first challenges the trial court's finding of a "substantial nexus" between the Property and drug sales pursuant to RCW 69.50.505(1)(h). Mr. Gangwish concedes several undercover drug sales took place at the Property. Nevertheless, he argues the evidence of nexus was insufficient because Ms. Luppino-Cronk's drug business was mobile and did not largely depend on his residence. We are unpersuaded. At trial, the City produced extensive evidence showing the Property had a significant history involving drug production and sales. Of particular note are (1) the hand-dug tunnel below the home containing an old marijuana grow, (2) drug trafficking supplies (such as ledgers and numerous empty baggies bearing the "#1" mark) found throughout

6

the Property, (3) the testimony from Mr. Gangwish's brother and Sergeant Michael Costello about on-going suspicious foot traffic to and from the home at all hours, and (4) the continued availability of drugs from the residence after the first law enforcement raid and initiation of legal forfeiture proceedings.

Mr. Gangwish also challenges the court's finding[1] that he knew the Property was being used in illegal drug sales. Again, this effort fails. Mr. Gangwish admitted he had purchased methamphetamine from Ms. Luppino-Cronk. He also had video security equipment connected to his bedroom, suggesting he was monitoring activities at the Property, including Ms. Luppino-Cronk's drug sales and the suspicious foot traffic. Furthermore, it is beyond dispute that by the time police executed the initial search warrant, Mr. Gangwish knew the Property had played host to illegal drug sales. Yet the sales did not stop there. Two more controlled purchases were conducted at the Property. During a subsequent search, law enforcement found a cell phone in Mr. Gangwish's room containing coded messaging referring to either the distribution or use of methamphetamine.

---

[1] Although labeled a conclusion of law, we may properly interpret this as a finding. *Nguyen*, 179 Wn. App. at 163.

7

The only evidence that Mr. Gangwish was not aware of drug distribution at the Property is his own denial. But the trial court found Mr. Gangwish's testimony not entirely credible. We will not disturb this finding on appeal.

*Constitutional Claims*

Apart from his statutory claims, Mr. Gangwish argues the forfeiture judgment violates the Eighth Amendment to the U.S. Constitution as an excessive fine. This argument was not raised in the trial court. Under RAP 2.5(a)(3), we may review an unpreserved error if the appellant demonstrates "manifest error affecting a constitutional right." In order to meet the rule's criteria, (1) the error must be "truly of constitutional magnitude," and (2) the appellant must demonstrate that the alleged error is "manifest." *State v. Kalebaugh*, 183 Wn.2d 578, 583, 355 P.3d 253 (2015). "If the record from the trial court is insufficient to determine the merits of the constitutional claim, then the claimed error is not manifest and review is not warranted." *State v. WWJ Corp.*, 138 Wn.2d 595, 602, 980 P.2d 1257 (1999).

In the current case, evaluating whether the forfeiture order amounts to an excessive fine requires a proportionality analysis.[2] Important to this analysis is the value of the

---

[2] Our ruling regarding nexus forecloses Mr. Gangwish's argument under the Eighth Amendment's instrumentality test.

8

No. 33267-5-III
*City of Yakima v. 1606 W. King St.*

forfeited property. *See Tellevik v. 6717 100th St. S.W.*, 83 Wn. App. 366, 375-76, 921 P.2d 1088 (1996). But the appellate record does not indicate the Property's value or the amount of equity held by Mr. Gangwish. Given this gap, we decline to review Mr. Gangwish's constitutional claims under RAP 2.5(a)(3).

CONCLUSION

Based on the foregoing, the trial court's judgment ordering forfeiture is affirmed, and Mr. Gangwish's request for attorney fees is denied.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Pennell, J.

WE CONCUR:

Fearing, C.J.

Siddoway, J.

9