[No. 22179-2-III.  Division Three.  July 12, 2005.]

Tri-City Metro Drug Task Force, *Respondent*, v. Maria Contreras, *Appellant*.

*James E. Egan* and *Todd V. Harms*, for appellant.

*Steven M. Lowe, Prosecuting Attorney*, and *Frank W. Jenny, Deputy*, for respondent.

¶1 SCHULTHEIS, J. — "[A]ll tangible or intangible personal property, proceeds, or assets acquired in whole or in part with proceeds traceable to an exchange or series of exchanges" in violation of the Uniform Controlled Substances Act, chapter 69.50 RCW, are subject to forfeiture. Former RCW 69.50.505(a)(7) (2001). Here, the hearing examiner misinterpreted the statute by ordering forfeiture without requiring proof or finding that the items seized were traceable to any illegal drug transaction. Accordingly, we reverse.

## FACTS

¶2 On November 21, 2001, Detective Darren Pitt of the Tri-City Metro Drug Task Force (Task Force) received a telephone call from a confidential informant. The informant advised Detective Pitt that Remigio Contreras, Jr., and Ramon Rios were in a Chevrolet pickup and were going to Mr. Contreras' home to "cut up" methamphetamine. Clerk's

Papers (CP) at 16. Detective Pitt determined that Mr. Contreras and Mr. Rios each had an outstanding warrant for his arrest.

¶3 Mr. Contreras lived at 8222 West Ruby in Pasco, Washington with his wife, Maria Del Contreras, and their three children (then 11, 9, and 7 years old). Sergeant Mike Monroe of the Task Force drove to the Contreras residence and saw the pickup leaving the residence. He stopped the pickup and arrested Mr. Contreras and Mr. Rios on the outstanding warrants. During a search of the pickup incident to arrest, officers found 13 bags of marijuana weighing a total of 13 ounces. The quantity was in an amount substantially larger than for personal use and was possessed with the intent to deliver. CP at 16 (finding of fact 4). The pickup was seized as a conveyance used to facilitate a drug offense.[1]

¶4 Detective Pitt applied for a telephonic warrant to search the Contreras residence, the pickup from which the marijuana was seized, and other vehicles parked at the premises. While the residence was under observation during the application process, police saw Jose M. Chavez arrive and enter with a key and then leave in his vehicle. Patrol cars stopped him. Mr. Chavez told officers he had received a phone call a short time before from someone unknown to him asking him to get a boot box out of the master bedroom closet in the Contreras residence. He stated he removed the boot box as requested and put it in his vehicle. He denied knowing the contents of the box.

¶5 A search warrant was then obtained for Mr. Chavez's car. Officers found the boot box. It held five sealed plastic

---

[1] While Mrs. Contreras assigned error to the findings concerning all the other seized property, she did not assign error to the finding that the pickup was subject to forfeiture as a conveyance used to facilitate a drug offense. CP at 18 (finding of fact 19). That finding is a verity on appeal. *Tapper v. Employment Sec. Dep't*, 122 Wn.2d 397, 407, 858 P.2d 494 (1993). Further, she devoted no portion of her brief to the conveyance provision of the forfeiture statute, former RCW 69.50.505(a)(4) (2001). *See* RAP 10.3. Moreover, she seemed to concede that forfeiture of the pickup was appropriate. *See* Appellant's Br. at 8 ("The 1988 Chevy pickup is [sic] seized because it was used to transport drugs."). Accordingly, we treat the issue of the seizure of the 1988 Chevrolet pickup as abandoned. *See McKee v. Am. Home Prods. Corp.*, 113 Wn.2d 701, 705, 782 P.2d 1045 (1989).

bags of methamphetamine. Each bag weighed approximately one pound. The manner of packaging was consistent with that produced by devices such as a Seal-A-Meal. The methamphetamine had a street value of approximately $25,000. The methamphetamine was possessed with intent to deliver. CP at 17 (finding of fact 8).

¶6 When the Contreras residence was searched, a scale commonly used to weigh controlled substances was found behind the living room couch. A Seal-A-Meal device and roll of bags were found in a five-gallon bucket in a shed behind the residence. A small quantity of methamphetamine was found above a kitchen cupboard.

¶7 Police seized three of the Contrerases' vehicles as proceeds of drug trafficking. First, they took a 1991 Nissan Pathfinder registered to Mr. Contreras. Second, they confiscated a 1999 Chevrolet Astro van registered to Mr. and Mrs. Contreras. A receipt for the purchase of the Astro van was found showing that Mr. Contreras had paid off the vehicle with $9,000 in cash on June 7, 2001. Third, they seized a 1995 Chevrolet Corvette. The Corvette was registered to another, but inside the car was a title and bill of sale signed by the registered owner indicating it had been sold to Mr. Contreras for $12,000.

¶8 Officers also seized $1,264 cash and seven silver dollar coins. They seized various other items of personal property: 70 DVD movies; a SEGA system with three controllers and 14 SEGA games; a Sharp fax machine; a black nylon suitcase; a Paperport scanner; an HP printer; a Symphonic VCR; a Compac PC with monitor, speakers, and keyboard; a Sony DVD player; a Compac PCU; an Emerson VCR; five Sony speakers; a Phillips Portable Stereo; a Broksonic TV/DVD; an RCA home theater TV; Weslo treadmill; two Kicker speakers; a Technique stereo receiver; an AIWA CD player; an Eagle depth finder; two Sony speakers; an AIWA stereo CD player with speakers; a Craftsman socket set in black case; a Sony stereo CD player with speakers; and a Craftsman recip saw. Police found docu-

ments in the search indicating that the Contrerases had a Chapter 13 bankruptcy plan approved on June 6, 2001.

¶9 Mrs. Contreras apparently was not charged with any crime related to these events. The status of Mr. Contreras' criminal charges, if any, related to the drugs is not part of the record.[2] Mrs. Contreras requested a hearing for the return of the seized property. At the forfeiture hearing, Detective Lee Barrow testified that the seized personal property appeared to be in like-new condition and appeared to have been recently purchased. He thought it would cost a substantial amount of money to furnish the house with the items that were seized, and the property did not appear consistent with the legitimate income he was able to document. Detective Barrow produced evidence that Mrs. Contreras' legitimate income was $5,901.57 in 1998; $9,028.29 in 1999; $8,521.13 in 2000; and $8,415.16 through the third quarter of 2001. Her total income from 1998 through the third quarter of 2001 was $31,866.15. Mr. Contreras' income from legitimate employment was $1,776.00 in 1998; $1,369.40 in 1999; $3,041.76 in 2000; and $1,124.00 through the third quarter of 2001. His total legitimate income from 1998 through the third quarter of 2001 was $7,311.16.

¶10 Detective Pitt testified that the Contreras residence was a "nice" double-wide manufactured home that appeared to be two or three years old and recently placed on the lot at the time of the search. CP at 26. He said it was "very clean" and well maintained. CP at 26.

¶11 Mrs. Contreras testified that the family had lived in the home "[g]oing on four years." CP at 37. The family was purchasing the residence. The monthly payment was $796. Annual real estate taxes were $1,400. Electricity averaged $50 per month and water $25.

¶12 The hearing examiner made findings of fact and determined that all of the seized property was subject to

[2] Conviction of a drug offense is not a prerequisite to forfeiture under former RCW 69.50.505 (2001).

forfeiture as proceeds of illegal drug activity and ordered that it be forfeited.

¶13 Mrs. Contreras filed a petition for review in Franklin County Superior Court. The petition was denied. Mrs. Contreras appealed to this court. The State's motion on the merits was denied.

## DISCUSSION

¶14 When we review an administrative decision, we apply the Administrative Procedure Act, chapter 34.05 RCW, directly to the agency record. RCW 34.05.570(3)(e); *Tapper v. Employment Sec. Dep't*, 122 Wn.2d 397, 402, 858 P.2d 494 (1993). We grant relief from an administrative order when the agency has erroneously interpreted or applied the law. RCW 34.05.570(3)(d).

¶15 Former RCW 69.50.505(a)(7) provides that "personal property, proceeds, or assets acquired in whole or in part with proceeds traceable to an exchange or series of exchanges" which constitute illegal drug activity are subject to forfeiture. This provision requires some evidence of tracing. *King County Dep't of Pub. Safety v. 13627 Occidental Ave. S.*, 89 Wn. App. 554, 950 P.2d 7 (1998). When "[t]he record does not reflect that any effort was made to trace the proceeds" to any illegal drug transaction, and the findings do not address that issue, there is no basis for the forfeiture of the personal property as proceeds. *Id.* Such is the case here. Since the property was not traceable to any illegal drug transaction, it was not subject to forfeiture under the statute. The hearing examiner misapplied the statute. Because the statute does not apply, the other issues raised by the parties are superfluous.

¶16 Under RAP 18.1(a), a party may recover reasonable attorney fees and expenses on appeal if applicable law grants the party such right. Mrs. Contreras seeks attorney fees under former RCW 69.50.505(f) (2001), which provides for costs and attorney fees to any claimant who substantially prevails in a civil forfeiture proceeding. As a prevail-

ing party she is entitled to costs and reasonable attorney fees.

¶17  Therefore, we reverse the order granting forfeiture and, pursuant to former RCW 69.50.505(e) (2001), order that the property be returned to Mrs. Contreras (excluding the Chevrolet pickup, *see* note 1). We also award costs and reasonable attorney fees below and on appeal upon her compliance with RAP 18.1(d).

KATO, C.J., and KURTZ, J., concur.