**FILED**
**OCTOBER 20, 2016**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| CITY OF SUNNYSIDE, | ) | No. 33262-4-III |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| ANDREAS GONZALEZ, | ) | |
| | ) | |
| Respondent. | ) | |

LAWRENCE-BERREY, J. — The City of Sunnyside (City) notified Andreas

Gonzalez of its intent to forfeit his car and approximately $6,000 in cash found on him

following a traffic stop. After a forfeiture hearing, Sunnyside Municipal Court Judge

Steven Michels found the car and cash were used and/or intended to be used in

furtherance of the sale of an illegal drug. He therefore ordered forfeiture of the property.

Mr. Gonzalez appealed to Yakima County Superior Court. That court determined that

Judge Michels abused his discretion and reversed the forfeiture order. The City appeals

to this court.

The City argues the superior court lacked subject matter jurisdiction because Mr.

Gonzalez failed to timely pay the appeal filing fee. The City also argues the superior

court failed to apply the applicable standards of review and erred in interposing its own view of the facts when it reversed the forfeiture order.

We hold that the superior court had subject matter jurisdiction because the time for Mr. Gonzalez to perfect his appeal was tolled due to the failure of the forfeiture order to notify Mr. Gonzalez of his right to appeal or the procedure for doing so. We, however, hold that substantial evidence supported the findings in the forfeiture order. Because appellate courts—including superior courts sitting in an appellate capacity—do not reweigh evidence, the superior court erred when it reweighed the evidence. We, therefore, reverse the superior court and reinstate the forfeiture order.

## FACTS

As discussed below, the standard of review is whether there was substantial evidence to support the findings in the original forfeiture order. We, therefore, present the evidence and all reasonable inferences in favor of the party that prevailed at that level, the City.

On September 1, 2013, the City seized Mr. Gonzalez's car and approximately $6,000 in cash. Also on that day, the City served Mr. Gonzalez a notice of seizure and intent to forfeit the property. The notice explained the forfeiture was because the property was used or intended to be used in connection with a controlled substance

violation. The notice warned Mr. Gonzalez the property would be deemed forfeited unless he notified the City within 45 days of seizure[1] of his right to the property. The notice assured Mr. Gonzalez he would be afforded a reasonable opportunity to be heard in accordance with Title 34 of the Revised Codes of Washington. On September 23, Mr. Gonzalez timely notified the City of his claim to the seized property.

A hearing was scheduled for April 7, 2014, before Sunnyside Municipal Court Judge Steven Michels. Both parties were represented by counsel at that hearing.

The City called Sunnyside Police Sergeant Scott Bailey. He testified that on September 1, 2013, he stopped Mr. Gonzalez for speeding. Mr. Gonzalez was driving a 2001 BMW with California plates. When Sergeant Bailey approached Mr. Gonzalez, he noticed Mr. Gonzalez was talking on his cell phone, and another cell phone was in the car. On request, Mr. Gonzalez provided his license, registration, and proof of insurance. Mr. Gonzalez had a Washington license, but the car had a California registration. Sergeant Bailey noticed the name on the registration was not Mr. Gonzalez's. He asked who owned the car, and Mr. Gonzalez said a friend. He asked who the friend was, and Mr. Gonzalez said a name other than the listed registered owner.

---

[1] The notice erroneously stated the 45 days runs from the date of seizure. Under RCW 69.50.505(4), the 45 days runs from the date the seizing agency provides statutory notice to the owner of the property.

3

Sergeant Bailey returned to his vehicle and conducted a driver's check. He learned that Mr. Gonzalez's license was suspended. Mr. Gonzalez was placed under arrest for driving with a suspended license. While waiting for a second officer to assist with impounding the car, one of Mr. Gonzalez's phones rang, and he asked the sergeant to answer it. The caller was Mr. Gonzalez's girlfriend. Eventually, Mr. Gonzalez said he wanted his girlfriend to take possession of his personal items, which included a large amount of cash, later determined to be $5,940. Mr. Gonzalez did not explain why he had this amount of cash on him.

When the second officer arrived to assist with impounding the car, he arrived with his canine partner. Sergeant Bailey gave Mr. Gonzalez his *Ferrier*[2] warnings, and Mr. Gonzalez consented to a search of the car. The canine found a "user amount" of cocaine in the car, and signaled that drug residue was present on the cash. Clerk's Papers (CP) at 10.

Sergeant Bailey learned that Mr. Gonzalez later claimed the $5,940 came from unemployment payments. Without objection, Sergeant Bailey testified he reviewed employment security records and learned Mr. Gonzalez had received $7,843 in unemployment benefits since 2005.

---

[2] *State v. Ferrier*, 136 Wn.2d 103, 960 P.2d 927 (1998).

On cross-examination, counsel for Mr. Gonzalez asked the sergeant why he believed the BMW and the cash were connected to illegal drug sales. Sergeant Bailey answered:

> Well, based upon . . . your client [telling] me at the time of the stop, that the vehicle belonged to someone else [then] . . . during the search, asking me if it made a difference that he owned the vehicle . . . and then from past experience . . . where it's not uncommon that a person be selected or offered a job to drive a vehicle that has . . . contraband from one place to the other place and they get x amount of money plus the vehicle they used to transport. It's not an uncommon experience . . . .

CP at 13.

The second officer who arrived with the canine unit also testified at the forfeiture hearing. He explained the cash with the drug residue was found in the driver's side door. On cross-examination, the officer admitted that drug residue on cash is not uncommon. And because cash passes from one person to another, residue does not mean that the possessor of the cash is connected with drug sales.

Mr. Gonzalez also testified at the hearing. He testified he was employed for five years at a local business, but ceased working there after he fractured his back in a car accident. Thereafter, in about 2009, he settled his personal injury claim for an unspecified amount. Other than that, for the past five years, his only source of income was unemployment benefits. He testified he lived with his parents, and his parents paid

5

his expenses. He testified he paid his parents rent "when I can . . . once a month." CP at 20.

Mr. Gonzalez also explained how he came into possession of the BMW. He testified he and a friend went to California in his friend's car to visit some relatives. Once in California, a relative offered to sell the BMW to him, but he did not have the cash on him. Mr. Gonzalez testified his friend had the cash on him, loaned the cash to him, and he bought the car. He then drove the car back to Washington with his friend and towed his friend's car. He claimed he had recently returned to Washington when he was stopped and had yet to register the car in his name. He also claimed that the $5,940 of cash in the car was money he had saved from his settlement and unemployment benefits, and was to repay his friend.

On cross-examination, Mr. Gonzalez admitted he gave the sergeant a false name for the car's owner. He explained, "I was probably nervous, scared I'm gonna end up being arrested." CP at 24.

Judge Michels issued a short written decision in favor of the City. A forfeiture order was entered May 22, 2014, together with findings of fact and conclusions of law. The findings of fact reiterated the factors discussed in Judge Michels's short written decision: (1) the presence of two cell phones in the car, (2) cocaine was found in the car,

6

(3) $5,940 in cash, (4) presence of enough cocaine on the cash to alert the canine, (5) the car being registered to someone other than Mr. Gonzalez, and Mr. Gonzalez having recently driven the car from California, and (6) the injury settlement and unemployment benefits did not explain the amount of cash in the car. These factors preceded the ultimate factual determination: "[T]he seized property, $5,940.00 U.S. Currency and a 2001 Silver 325I BMW, was used and/or intended to be used for a controlled substance violation, specifically the furtherance of the sale of an illegal drug." CP at 70.

Mr. Gonzalez appealed the forfeiture order to Yakima County Superior Court. The City sought to dismiss Mr. Gonzalez's appeal because Mr. Gonzalez had failed to pay the appeal fee to the Sunnyside Municipal Court. The superior court denied the City's motion, and permitted Mr. Gonzalez to pay the appeal fee so the merits of the appeal could be determined. Mr. Gonzalez then paid the appeal fee to the municipal court.[3]

The parties scheduled a hearing on the merits for February 17, 2015. The superior court reversed the forfeiture order. In its conclusions of law, the court determined:

> 3.      That there is no dispute as to Judge Michel's Findings of Fact and Conclusions of Law, numbers 1, 2, and 3.
>    . . . .
> 5.      There is no evidence that the US currency or the automobile

---

[3] The appeal fee was paid to the municipal court instead of the superior court because the parties believed the appeal process was governed by the Rules of Appeal for Courts of Limited Jurisdiction (RALJ).

7

were the "proceeds of narcotics transactions" RCW 69.50.505(g).

6. There was no testimony about the amount of illicit substance that could be on currency and trigger a response from a canine.

7. The auto was titled in the name of another at the time of his arrest but was titled in the defendant's name on September 5, 2014, four days later.

8. The record is devoid of any evidence that drug transactions were occurring.

9. The lower court abused its discretion in finding against the appellant.

CP at 106.

The City filed a motion for discretionary review, and alternatively argued it had an appeal as a matter of right under RCW 69.50.505(5) and RCW 34.05.526. Our commissioner ruled the City had an appeal as a matter of right. Mr. Gonzalez moved to modify the commissioner's ruling. We denied his motion.

## ANALYSIS

A. SUBJECT MATTER JURISDICTION

The City first argues that the superior court lacked subject matter jurisdiction to consider Mr. Gonzalez's appeal. Subject matter jurisdiction is the authority to hear and determine the class of action to which a case belongs. *Bour v. Johnson*, 80 Wn. App. 643, 647, 910 P.2d 548 (1996). If a court lacks subject matter jurisdiction it is "powerless to pass on the merits of the controversy brought before it." *Skagit Surveyors & Eng'rs, LLC v. Friends of Skagit County*, 135 Wn.2d 542, 556, 958 P.2d 962 (1998). A party

8

cannot waive subject matter jurisdiction, and may raise the issue of lack of subject matter jurisdiction at any time. *Id.* Issues of subject matter jurisdiction are questions of law reviewed de novo. *Dougherty v. Dep't of Labor & Indus.*, 150 Wn.2d 310, 314, 76 P.3d 1183 (2003); *Crosby v. Spokane County*, 137 Wn.2d 296, 301, 971 P.2d 32 (1999).

> 1. *Judge Michels was the de facto designee and the matter proceeded under the Administrative Procedure Act, chapter 34.05 RCW*

The Uniform Controlled Substances Act, chapter 69.50 RCW, provides for the seizure and forfeiture by law enforcement agencies of many types of property used or intended for use in connection with violations of its provisions. RCW 69.50.505(1). A notice of seizure and intent to forfeit is required to be served on parties whose interests the agency wants to forfeit. RCW 69.50.505(3). If a person notifies the agency in writing of his or her claim of ownership within 45 days of being served with the agency's notice, then the person must be afforded a reasonable opportunity to be heard. RCW 69.50.505(5).

The hearing is before the seizing agency's chief law enforcement officer, or that officer's designee, unless the claimant timely seeks to have the hearing removed to a court of competent jurisdiction. RCW 69.50.505(5). The court to which the matter is removed is the district court if the matter in controversy is within the district court's jurisdictional limit as set forth by RCW 3.66.020. RCW 69.50.505(5). If the proceeding

9

is not removed, the hearing proceeds under chapter 34.05 RCW, Washington's

Administrative Procedure Act (APA). RCW 69.50.505(5). Here, there is no record of

Mr. Gonzalez seeking to have the forfeiture hearing removed. Therefore, the City's chief

of police or his designee was required to serve as the hearing officer.

The parties disagree on whether Judge Michels was the city of Sunnyside's chief

of police's designee. Judge Michels had been conducting these forfeiture hearings for

several years, and there is no record of the City's chief of police ever appointing Judge

Michels.

But RCW 69.50.505(5) does not require a formal written designation. Nor was it

necessary for a present or past police chief to testify as to Judge Michels's authority. The

parties did not object to Judge Michels hearing the forfeiture proceeding prior to or

during the hearing. The parties have thus waived their right to judicial review of his

authority. *Cf. ML Park Place Corp. v. Hedreen*, 71 Wn. App. 727, 736, 862 P.2d 602

(1993) (where a party voluntarily submits an issue to arbitration without challenging the

arbitrability of that issue, and where the merits are ruled on by the arbitrator, that party is

deemed to have waived his or her right to judicial review of the arbitrability issue).

Because Judge Michels conducted the forfeiture as the chief of police's de facto designee,

the APA controls the procedure for this appeal.

10

> 2.     *Judge Michels's forfeiture order did not comply with the APA, thus tolling Mr. Gonzalez's time to appeal*

Mr. Gonzalez's right to seek review of Judge Michels's forfeiture order required him to properly seek review within 30 days of that order in accordance with RCW 34.05.542(2). It also required him to comply with RCW 34.05.514(1). The provision provides:

> [P]roceedings for review under this chapter shall be instituted by paying the fee required under RCW 36.18.020 [to the superior court] and filing a petition in the superior court, at the petitioner's option, for (a) Thurston county, (b) the county of the petitioner's residence or principal place of business, or (c) in any county where the property owned by the petitioner and affected by the contested decision is located.

RCW 34.05.514(1).

Here, Mr. Gonzalez initially filed his appeal in municipal court and did not pay the filing fee. Months later, he paid the filing fee to the municipal court and that court then transferred its file to the superior court.

Ordinarily, if a petitioner does not comply with the terms of the APA, the superior court does not have jurisdiction to hear an administrative appeal. *City of Seattle v. Pub. Emp't Relations Comm'n*, 116 Wn.2d 923, 926-27, 809 P.2d 1377 (1991); *see also Skagit Surveyors*, 135 Wn.2d at 556-57. However, if the hearing officer or the agency does not comply with its own statutory obligations, the deadline for filing a petition for review is

11

tolled. *See, e.g.*, *Leson v. Dep't of Ecology*, 59 Wn. App. 407, 410, 799 P.2d 268 (1990) (tolling the deadline for filing a petition for review due to the agency's failure to comply with statutory mandates); *Felida Neigh. Ass'n v. Clark County*, 81 Wn. App. 155, 161, 913 P.2d 823 (1996) (same).

Mr. Gonzalez argues that Judge Michels's forfeiture order did not comply with the terms of the APA. Specifically, he argues the order did not contain the statutorily required notice of Mr. Gonzalez's appeal rights and the procedure for filing an appeal. Courts review an order's compliance with the requirements of the APA. RCW 34.05.570(3)(c).

The APA requires every agency to "adopt as much of the model rules [of procedure] as is reasonable under its circumstances." RCW 34.05.250. Chapter 10-08 WAC lays out the model rules of procedure for administrative hearings. The model rules "supplement" the provisions of the APA. WAC 10-08-001(1). An agency may adopt a procedural rule different than the model rules, but if it does so, it must provide an explanation. RCW 34.05.250; WAC 10-08-001(2). Here, there is no evidence the city of Sunnyside Police Department adopted any administrative procedural rules. Thus, the model rules supplement the APA and apply here.

The model rules of procedure provide that "Every decision and order, whether

12

initial or final, shall . . . [c]ontain a statement describing the *available post-hearing remedies*." WAC 10-08-210(6) (emphasis added). "Because invariably there is a time within which a petitioner must fulfill jurisdictional requirements, there is no principled basis for allowing an agency to do less than the statute requires it to do before that time begins to run." *Leson*, 59 Wn. App. at 410; *see also Felida*, 81 Wn. App. at 161. When the agency's failure to comply with the APA causes a petitioner to not timely invoke the jurisdiction of a reviewing court, the time for filing the petition may be equitably tolled. *Felida*, 81 Wn. App. at 161-62.

Here, Judge Michels's forfeiture order did not notify Mr. Gonzalez of his posthearing remedies, such as judicial review in superior court or direct review to this court. *See* RCW 34.05.514 (procedure for seeking review in superior court); RCW 34.05.518 (procedure for seeking direct review in Court of Appeals). Thus, the forfeiture order does not comply with the model rules of procedure, specifically WAC 10-08-210(6). Because the model rules are intended to supplement the APA, failure to comply with the model rules is akin to failure to comply with the APA. For this reason, the superior court had authority to equitably toll the time for Mr. Gonzalez so he could pay the appeal filing fee.[4]

---

[4] An additional jurisdictional issue potentially presents itself: Mr. Gonzalez failed

B.     SUBSTANTIAL EVIDENCE SUPPORTED JUDGE MICHELS'S FORFEITURE ORDER

When reviewing agency action under the APA, a reviewing court sits in the same

position as the superior court and applies the APA standards directly to the administrative

record. *Campbell v. Emp't Sec. Dep't*, 180 Wn.2d 566, 571, 326 P.3d 713 (2014); *Dep't*

*of Ecology v. Douma*, 147 Wn. App. 143, 151, 193 P.3d 1102 (2008); *Bond v. Dep't of*

*Soc. & Health Servs.*, 111 Wn. App. 566, 571, 45 P.3d 1087 (2002). Thus, this court

reviews the agency's order, not the decision of the superior court. *See, e.g.*, *Pal v. Dep't*

*of Soc. & Health Servs.*, 185 Wn. App. 775, 781, 342 P.3d 1190 (2015); *King County v.*

*Cent. Puget Sound Growth Mgmt. Hr'gs Bd.*, 142 Wn.2d 543, 553, 14 P.3d 133 (2000).

The party challenging the agency action has the burden of showing the invalidity

of the agency action. RCW 34.05.570(1)(a). Here, the superior court invalidated Judge

Michels's forfeiture order on the grounds that there was no evidence that the seized items

were traceable to any drug transaction.

When reviewing an agency order, a court may set aside the order if, among other

reasons, "[t]he order is not supported by evidence that is substantial when viewed in light

---

to file his petition for review (which he termed a notice of appeal) in superior court. The
City's assignment of error relating to its lack of jurisdiction argument narrowly challenges
only the superior court's decision to allow Mr. Gonzalez to pay the appeal fee late.
Although we have discretion to decide an issue beyond how it is framed in an assignment
of error, we decline to do so here. Here, the City's failure to inform Mr. Gonzalez of his

14

of the whole record before the court, which includes the agency record for judicial

review, supplemented by any additional evidence received by the court under this

chapter." RCW 34.05.570(3)(e).

The City had the original burden of establishing that the seized property

could be lawfully forfeited. The City sought to forfeit the seized property under

RCW 69.50.505(1)(g). That section provides:

> (1) The following are subject to seizure and forfeiture and no property right
> exists in them:
>
> . . . .
>
> (g) All . . . tangible or intangible personal property, proceeds, or
> assets acquired in whole or in part with *proceeds traceable to an exchange
> or series of exchanges in violation of this chapter or chapter 69.41 or 69.52
> RCW*, and all moneys, negotiable instruments, and securities used or
> intended to be used to facilitate any violation of this chapter or chapter
> 69.41 or 69.52 RCW.

RCW 69.50.505 (emphasis added). If the record does not reflect any effort to trace the

proceeds to an illegal drug transaction, and the findings do not address the issue, there is

no basis for the forfeiture action. *Tri-City Metro Drug Task Force v. Contreras*, 129 Wn.

App. 648, 653, 119 P.3d 862 (2005); *King County Dep't of Pub. Safety v. Real Prop.

Known as 13627 Occidental Ave. S.*, 89 Wn. App. 554, 558-60, 950 P.2d 7 (1998).

In *Contreras*, law enforcement sought to seize personal property it believed was

posthearing remedies *is* the reason Mr. Gonzalez failed to correctly file his appeal.

linked to drug transactions. 129 Wn. App. at 651-52. At the forfeiture hearing, one of the investigating detectives testified that Mr. Contreras's home and possessions seemed to cost substantially more money than his legitimate income. *Id.* at 652. The detective presented records documenting Mr. Contreras's income and his wife's income. *Id.* The hearing examiner determined that the property was subject to forfeiture as proceeds of an illegal drug transaction. *Id.* at 652-53. Mrs. Contreras appealed. *Id.* at 653. On review, the appellate court noted that the record contained no evidence that traced the forfeited property to an illegal drug transaction, and the hearing examiner's findings did not address the issue. *Id.* Because the property was not traceable to an illegal drug transaction, it was not subject to forfeiture. *Id.* The appeals court reversed the forfeiture order and ordered that Mrs. Contreras's property be returned. *Id.* at 654; *see also King County Dep't of Pub. Safety*, 89 Wn. App. at 560-61 (reversing order for forfeiture and ordering return of property due to lack of any evidence that seized property was traceable to an illegal drug transaction).

In *Valerio v. Lacy Police Department*, the city of Lacey seized $58,300 in cash, made up of newer $100.00 bills placed in a safe found in the trunk of Mark Valerio's girlfriend's car. 110 Wn. App. 163, 166, 39 P.3d 332 (2002). After the money was taken to an evidence room, a drug canine repeatedly alerted to the money, indicating the

16

presence of drug residue. *Id.* At the forfeiture hearing, Mr. Valerio's ex-girlfriend testified Mr. Valerio told her he wanted to start a drug-related business. *Id.* Also, an officer testified that Mr. Valerio originally said the money was not his, and later changed this story. *Id.* at 166, 168. At the hearing, Mr. Valerio claimed the money was his and he had acquired it over time. *Id.* at 167. His tax returns however showed he earned $121 per week from 1995 to 1998, and had gambling winnings of $16,000 in 1998. *Id.* at 169, 168 n.3. The trial court determined Mr. Valerio's explanations were unpersuasive. *Id.* at 168. Under RCW 69.50.505, the trial court found there was probable cause to believe the seized money was used or would be used for drug dealing, and Mr. Valerio had failed to satisfactorily refute the evidence. *Id.* Mr. Valerio appealed, and the appellate court reversed. *Id.* at 175.

The *Valerio* court noted Mr. Valerio *could have* acquired the $58,300 from legal sources, such as earnings and gambling (despite tax returns stating otherwise). *Id.* at 179. The court also noted, without explanation, the drug canine *could have* alerted to odors which the money "absorbed from sources other than contact with drugs." *Id.* at 181. The *Valerio* court reversed the trial court because the city of Lacey could not disprove, *to the appellate court's satisfaction*, the claimant's assertions. We question this decision and will not rely on it.

17

In *Sam v. Okanogan County Sheriff's Office*, two people were killed when their plane crashed in Okanogan County. 136 Wn. App. 220, 223, 148 P.3d 1086 (2006). Law enforcement discovered the wrecked plane along with $118,134 in cash and property. *Id.* The Okanogan County Sheriff's Office sought forfeiture of the cash and property. *Id.* at 224. At the forfeiture hearing, a detective testified and noted several oddities about the plane. *Id.* at 224-25. For example, the plane's transponder was off, the passenger seats were removed to make space for extra fuel tanks, extra cargo space had been added, the plane had smaller than normal identifying letters and numbers, and a ledger was found that appeared to document a number of drug transactions. *Id.* The only explanation offered by the opposing party, with no apparent supporting evidence, was that the money was part of an inheritance. *Id.* at 225. Taken as a whole, the appellate court found that these facts showed the money was connected to drug activity and supported a forfeiture order. *Id.* at 229-30.

Here, Judge Michels's forfeiture order sets forth six factors that support his ultimate finding that the seized property "was used and/or intended to be used for a controlled substance violation, specifically the furtherance of the sale of an illegal drug." CP at 70. We must affirm the finding if it is supported by substantial evidence. *City of Walla Walla v. $401,333.44*, 164 Wn. App. 236, 255, 262 P.3d 1239 (2011). Substantial

18

evidence is the quantum of evidence sufficient to persuade a rationale trier of fact. *Id.* at 256. Because we do not reweigh evidence or redetermine credibility, we must consider the evidence and all reasonable inferences in the light most favorable to the City, the party who prevailed before the trier of fact. *Id.*

Mr. Gonzalez recently returned from California in a car he did not own, and there was a user's amount of cocaine found in the car, together with $5,940 in cash. Mr. Gonzalez did not tell Sergeant Bailey the cash was repayment to a friend. And he lied about who owned the car. Despite having received funds in the form of a personal injury settlement and unemployment benefits during the past five years, he implied those funds were depleted when he answered that he paid his parents rent "when I can . . . once a month." CP at 20. Notably, Sergeant Bailey, a 15-year veteran of the city of Sunnyside Police Department, testified the seized property could be traced to illegal drug sales. He testified, based on his experience, it was not uncommon for a person to drive a car with contraband from one place to another, and to receive money and the car as payment. Judge Michels was entitled to consider the above factors and accept Sergeant Bailey's testimony. Judge Michels did not have to believe Mr. Gonzalez's claim that while visiting relatives in California his friend loaned him $6,000 in cash to buy a used BMW, and they then towed his friend's car all the way back to Washington. Nor was Judge

19

No. 33262-4-III
*City of Sunnyside v. Gonzalez*

Michels required to believe Mr. Gonzalez when he claimed he had $6,000 in cash saved over the past five years to repay his friend. We conclude the ultimate fact—that the seized property can be traced to the sale of illegal drugs—is supported by substantial evidence. The superior court erred in reversing that finding and vacating the forfeiture order. We reverse the superior court and reinstate the forfeiture order.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Lawrence-Berrey, J.

WE CONCUR:

Siddoway, J.                    Fearing, C.J.

20